## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCUS M. WOODARD,** | : | |
| **Plaintiff** | : | |
| | : | **No. 3:12-cv-02189** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CAROLYN W. COLVIN** | : | |
| **COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **Defendant** | : | |

### MEMORANDUM

Before the Court is Plaintiff Marcus M. Woodard's complaint, wherein he requests
review of the Social Security Commissioner's decision denying him disability insurance benefits
and supplemental security income payments.  (Doc. No. 1.)  The motion has been briefed, and on
May 21, 2014, the Court heard oral argument on Plaintiff's complaint.  (Doc. No. 19.)  For the
reasons that follow, the Court will remand the case to the Commissioner for further proceedings.

## I.     BACKGROUND

On December 14, 2009, Plaintiff protectively filed a Title II application for a period of
disability and disability insurance benefits, and a Title XVI application for supplemental security
income.  (Doc. No. 1 ¶ 5.)  Both claims were denied on August 18, 2010, and Plaintiff
subsequently filed a request for a hearing.  (Id.)  On July 20, 2011, a hearing on Plaintiff's claims
convened before Administrative Law Judge ("ALJ") F. Patrick Flanagan.  (Id.)  On September
20, 2011, the ALJ issued a decision denying Plaintiff's claim.  (Doc. No. 7-2 at 15-23.)  Plaintiff
then filed a request for review with the Appeals Council, which, on September 7, 2012, denied
the request for review.  (Doc. No. 1 ¶ 7.)  The ALJ's decision of September 20, 2011, is thus the
final decision of the Commissioner and the Social Security Administration.  (Id.)

On November 12, 2012, Plaintiff filed a complaint in this Court appealing the

Commissioner's decision.  (Doc. No. 1.)  Plaintiff argues that the ALJ erred by: (1) failing to

find that the claimant's right hand impairment was a severe impairment, (2) rejecting the

opinions of treating physicians, (3) engaging in his own medical analysis, unsupported by the

medical evidence in the record, (4) concluding that Plaintiff was capable of returning to truck

driving, and (5) relying on the vocational grid to determine that the Plaintiff was capable of other

work.  (Doc. No. 13.)

## II.     STANDARD OF REVIEW

A trial court has plenary review of all legal issues decided by the Commissioner.  Poulos

v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007).  The trial court's review of any findings

of fact, however, is limited to whether those findings are supported by "substantial evidence."

Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  The substantial evidence standard is

highly deferential, and is satisfied with "more than a mere scintilla" of evidence.  Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal citation omitted).  "Where the ALJ's findings

of fact are supported by substantial evidence, we are bound by those findings, even if we would

have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001).  Substantial evidence "does not mean a large or considerable amount of evidence," but

rather "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quotation omitted).  Substantial

evidence exists only "in relationship to all the other evidence in the record," see Cotter v. Harris,

642 F.2d 700, 706 (3d Cir. 1981), and therefore a court reviewing the Commissioner's decision

must scrutinize the record as a whole, including whether the Commissioner adequately

developed the record.  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

To receive disability benefits, a plaintiff must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medical determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which exists in the national
> economy" means work which exists in significant numbers either in the region
> where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process when evaluating disability insurance

claims.  20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92.  This process requires the

Commissioner to consider, in sequence, whether a claimant, first, is engaging in substantial

gainful activity; second, has an impairment that is severe or a combination of impairments that is

severe; third, has an impairment or combination of impairments that meets or equals the

requirements of a listed impairment; fourth, has the residual functional capacity to return to his

or her past work; and, if not, fifth, whether he or she can perform other work in the national or

regional economy.  Id.  For the purposes of this determination, residual functional capacity is the

individual's maximum remaining ability to do sustained work activities in an ordinary work

setting on a regular and continuing basis.  See Titles II and XVI: Assessing Residual Functional

Capacity in Initial Claims, 61 Fed. Reg. 34475 (July 2, 1996).  The residual functional capacity

assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. § 404.1545; see

Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (noting that residual functional capacity

is "defined as that which an individual is still able to do despite the limitations caused by his or

her impairment(s)").

## III.   DISCUSSION

At the first step of the sequential evaluation process, the ALJ determined that Plaintiff

had not engaged in substantial gainful activity since October 27, 2009, the alleged onset date.

(Doc. No. 7-2 at 17.)  At step two, the ALJ found that Plaintiff has the severe impairment of

degenerative disc disease of lumbar spine.  (Id. (citing 20 CFR 404.1520© and 416.920©.)  At

step three, the ALJ determined that Plaintiff does not have an impairment or combination of

impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR

Part 404.  (Id.)  At step four, the ALJ concluded that Plaintiff has the residual functional capacity

to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and

416.967(b).  (Id. at 19.)  Specifically, the ALJ found the following: Plaintiff can lift and carry

objects weighing up to 20 pounds; frequently lift and carry objects weighing up to 10 pounds;

stand and walk up to six hours in an eight-hour day; and, occasionally climb, stoop, crouch and

crawl.  (Id.)  The ALJ further concluded that in light of his residual functional capacity, the

Plaintiff is capable of performing past relevant work as a truck driver.  (Id. at 21.)   Finally, at

step five, the ALJ determined that, in consideration of Plaintiff's age, education, work

experience and residual functional capacity, there are other jobs that exist in significant numbers

in the national economy that Plaintiff can perform.  (Id.)

Plaintiff objects to the ALJ's findings on five grounds: (1) the ALJ erred in rejecting the

opinions of his treating physician, (2) the ALJ erred in failing to find that the Plaintiff's right hand

impairment was a severe impairment (3) the ALJ erred in engaging in his own medical analysis,

unsupported by the medical evidence in the record, (4) the ALJ erred in concluding that Plaintiff was

capable of returning to his prior relevant work of truck driving, and (5) the ALJ erred in relying

alternatively on the vocational grid to determine that the Plaintiff was capable of other work.  (Doc.

No. 13.)

A.      **Failed to give appropriate weight to opinion of Plaintiff's treating physician**

Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating

physician, Dr. Bower, and of Plaintiff's chiropractor, Dr. Heffner.  (Doc. No. 13 at 11-12.)  The

specific opinion evidence at issue here stems from a report filled out by Dr. Heffner and co-

signed by Dr. Bower.  (Doc. No. 7-7 at 56-59.)  This report categorized Plaintiff as disabled and

reflected the results of a test performed by Dr. Heffner.  (Id.) The ALJ ultimately gave "very

little weight . . . to [Dr.] Bower's 'co-signed' opinion."  (Doc. No. 7-2 at 21.)  Plaintiff contends

that Dr. Bower's opinion is consistent with the clinical and diagnostic evidence, and that the

ALJ's decision to afford it "very little weight" was in error and not supported by substantial

evidence.  (Doc. No. 13 at 11-12.)

Generally, a treating physician's opinion is given more weight than that of non-treating

sources.  20 CFR § 404.1527(c).  Where an ALJ does not accord a treating physician's opinion

controlling weight, she will "apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of

[Section 404.1527], as well as the factors in paragraphs (c)(3) through (c)(6) of Section

404.1527] in determining the weight to give the opinion."  Id.  Section 404.1527 (c)(2)(I)-(ii)

instructs the ALJ to examine the "length of the treatment relationship and the frequency of

examination," as well as the "nature and extent of the treatment relationship." Id.  Section

404.1527(c)(3)-(6) instructs the ALJ to examine the supportability, consistency, specialization

and "other factors" that tend to support or contradict the opinion. Id.  Where a treating

physician's opinion is inconsistent with the record as a whole, the ALJ may accord less weight to

the opinion of that physician, so long as the ALJ's conclusion is supported by substantial

evidence.  See Plummer, 186 F.3d at 429.

The Court finds that the ALJ's decision to accord "very little weight" to Dr. Bower's co-

signed opinion is not supported by substantial evidence.  First, although the ALJ and the

Defendant are somewhat dismissive of the fact that the report was merely co-signed by

Plaintiff's treating physician rather than having originated with him, a co-signed report like the

one at issue here may be considered a treating physician's opinion.[1]  See, e.g., Santiago v.

Barnhart, 441 F.Supp.2d 620, 628 (S.D.N.Y. 2006) ("[T]here is no reason to believe that the

report [the treating physician] signed does not reflect his own view. Nor is there any legal

principle which states that a doctor must personally write out a report that he signs for it to be

afforded weight.")  Second, although the ALJ discounts the report and assessment co-signed by

Plaintiff's physician on the grounds that "in view of the lack of any concurrent examination

findings, I can only conclude that the 'assessment' involved acceptance of what the claimant said

he could do and not do" (Doc. No. 7-2 at 20), this conclusion is not supported by substantial

evidence in the record.  Rather, the Plaintiff testified that the examination with Dr. Heffner that

resulted in the report lasted "over an hour," and involved testing of his physical abilities through

---

[1]  The Court notes that a chiropractor's opinion, like that of Dr. Heffner, is not generally "an acceptable medical source" entitled to controlling weight. See Hartranft v. Apfel, 181 F.3d 358, 361-62 (3d Cir. 1999).

the lifting of weights.  (Doc. No. 7-2 at 57.)  This is reinforced in the co-signed report itself,

which contains specific findings as to how well Plaintiff could move, and what Plaintiff was able

to lift and carry.  (Doc. No. 7-7 at 56-59.)  Given this evidence, the Court finds that it was

improper for the ALJ to speculate that the report was nothing more than a rubber stamping of

Plaintiff's subjective complaints.  See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)

(internal quotations omitted) ("In choosing to reject the treating physician's assessment, an ALJ

may not make speculative inferences from medical reports and may reject a treating physician's

opinion outright only on the basis of contradictory medical evidence and not due to his or her

own credibility judgments, speculation or lay opinion.").

    The additional reasons provided by the ALJ for giving "very little weight" also fail to

form a substantial basis for his conclusion.  He cites earlier notes by Dr. Bower that Plaintiff

displayed exaggerated pain behavior and concern over Plaintiff's use of his pain medication

(Doc. No. 7-2 at 21), but this does not necessarily contradict the opinions in the report Dr. Bower

later co-signed that Plaintiff is limited in the tasks he can perform.   The ALJ also cites evidence

that Plaintiff may not have gone to a consultation and that "the clinical findings by Dr.

Bowers[sic] were very limited."  (Id.)  However, Dr. Bower specifically noted that he believed

Plaintiff had a degenerative disk disease.  (Doc. No. 7-7 at 39.)  On the whole, the Court finds

these justifications do not constitute "substantial evidence" for the ALJ's disregard of the

treating physician's opinion.

    Additionally, even if the ALJ is correct that the report is not entitled to great weight, the

still Court afforded it even less weight than the opinion of state agency consultant Dr. Bohn who,

it appears, never even met with Plaintiff in person, merely on the phone.  See Mason v. Shalala,

994 F.2d 1058, 1067 (3d Cir. 1993) ("[A] court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all."). Dr. Bohn also relied on the assessments of other individuals who also did not examine Plaintiff; in his report he notes that "although the [Plaintiff] alleges significant limitations, the field office personnel observed him to have no difficulties while on the phone with the field office." (Doc. No. 7-7 at 21.) The Court is unclear how any physical difficulties related to Plaintiff's alleged hand and back problems could be observed over the phone. Under the circumstances, the Court does not find a substantial basis in the evidence for giving Dr. Bohn's opinion more weight than the report co-signed by Plaintiff's treating physician, Dr. Bower. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations and quotations omitted) ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."). Accordingly, the Court will remand to the ALJ for further consideration of the evidence, consistent with this memorandum. On remand, the ALJ should reconsider the proper weight to be given to the opinion of Dr. Bower in light of the full record.

### B.    Alternative arguments

As noted above, Plaintiff raises four additional arguments beyond that already addressed by the Court: (1) the ALJ erred in failing to find that the Plaintiff's right hand impairment was a severe impairment, (2) the ALJ erred in engaging in his own medical analysis, unsupported by the medical evidence in the record, (3) the ALJ erred in concluding that Plaintiff was capable of returning to his prior relevant work of truck driving, and (4) the ALJ erred in relying

alternatively on the vocational grid to determine that the Plaintiff was capable of other work. (Doc. No. 13.)

However, for the reasons stated above, the Court will remand this case to the ALJ for further proceedings and to reconsider the medical opinions of record.  Accordingly, the Court finds it unnecessary to address Plaintiff's additional arguments.  In the event that the ALJ makes a different finding concerning Plaintiff's residual functional capacity on remand, this would render Plaintiff's arguments concerning the ALJ's analysis at steps four and five of the sequential evaluation process moot.  Reconsideration of the medical evidence may also alter the Commissioner's decision regarding the severity of Plaintiff's hand limitations.  Thus, the Court will not address Plaintiff's alternative arguments.  An order consistent with this memorandum follows.